IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:13-CV-287-D

| | | |
|---|---|---|
| BRENDA SUE ALVAREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Brenda Sue Alvarez ("plaintiff") challenges the final decision of defendant Acting Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") benefits on the grounds that she is not disabled. The case is before the court on the parties' motions for judgment on the pleadings (D.E. 21, 23). Both filed memoranda in support of their respective motions. (D.E. 22, 24). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* 12 Nov. 2013 Order (D.E. 25)). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the Commissioner's final decision be affirmed.

I.      **BACKGROUND**

        A.      **Case History**

        Plaintiff filed an application for SSI benefits on 12 July 2010 alleging the onset of disability on 28 January 2010.[1]  Transcript of Proceedings ("Tr.") 13. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 13. On

---

[1] In her application, plaintiff initially alleged an onset date of 1 February 2002 (Tr. 166), but amended the onset date to 28 January 2010 at the hearing before the Administrative Law Judge (Tr. 23).

21 October 2011, a hearing was held before an Administrative Law Judge ("ALJ") in Raleigh, North Carolina. Tr. 20-55. The ALJ issued a decision denying plaintiff's claim on 23 November 2011.[2] Tr. 9-19. Plaintiff timely requested review by the Appeals Council (Tr. 6-8) and submitted for its review records of treatment she received after the date of the ALJ's decision.[3] The Appeals Council denied the request for review on 1 March 2013. Tr. 1-5. The Appeals Council further found that the additional records submitted by plaintiff did not affect the ALJ's decision because they related to a time after the date of the decision. Tr. 2. The Appeals Council did not admit these additional records as evidence, but rather returned them to plaintiff for her use in filing a new claim. Tr. 2. Plaintiff has not submitted these records to the court for the purposes of the instant appeal. At the time the Appeals Council denied plaintiff's request for review, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 416.1481. Plaintiff commenced this proceeding for judicial review on 24 April 2013, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See In Forma Pauperis* Mot. (D.E. 1); Order Allowing Mot. (D.E. 4); Compl. (D.E. 5)).

**B.      Standards for Disability**

The Social Security Act ("Act") defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act defines a physical or mental impairment as

---

[2] The copy of the ALJ's decision included in the record is undated. *See* Tr. 19. The Appeals Council referenced the decision date as 23 November 2011 in its order denying plaintiff's request for review. Tr. 1. The index for the record references the decision date as 21 November 2011. (*See* D.E. 13 at 1). For the purposes of this Memorandum and Recommendation, the court will treat 23 November 2011, the date referenced by the Appeals Council, as the date of the ALJ's decision.

[3] Specifically, plaintiff submitted treatment records from Nash Health Care dated 7 January 2012 and 28 July 2012 through 29 July 2012 and from ECU Physicians dated 30 April 2012.

"an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). "[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] and meets the duration requirement, we will find that you are disabled. . . .

> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 416.920(a)(4)(i)-(iv).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments must be considered throughout the disability determination process. *Id.*

Where, as in the present case, an ALJ finds a claimant to have medically determinable mental impairments at step two, the Regulations require the ALJ to follow a special technique to evaluate such impairments, as described in 20 C.F.R. § 416.920a(a). Under the special technique, an ALJ is to rate the degree of a claimant's functional limitation in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 416.920a(c)(3). The first three functional areas are rated on a five-point scale: none, mild, moderate, marked, and extreme. *Id.* § 416.920a(c)(4). A four-point scale is used to rate the fourth functional area: none, one or two, three, and four or more. *Id.* The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. *Id.*

### C. Findings of the ALJ

Applying the five-step analysis of 20 C.F.R. § 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since 12 July 2010, her application date. Tr. 15 ¶ 1. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations, 20 C.F.R. §

416.920(c):  spine disorder, fibromyalgia, syncope, and hypothyroidism.  Tr. 15 ¶ 2.  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listings.  Tr. 16 ¶ 3.

The ALJ next determined that plaintiff had the RFC to perform medium work,[4] except that she is "limited to only occasional climbing, frequent stooping and crouching; and no concentrated exposure to hazards."  Tr. 16 ¶ 4.

At step four, the ALJ found that plaintiff is able to perform her past relevant work as a customer service representative because the work-related activities involved with that work are not precluded by her RFC.  Tr. 19 ¶ 5.  Accordingly, the ALJ concluded that plaintiff is not disabled.  Tr. 19 ¶ 6.

## II.    DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld.  *See, e.g., Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

---

[4] *See* 20 C.F.R. § 416.967(c) (defining medium work as work involving lifting, carrying, pushing, or pulling up to 50 pounds occasionally and 25 pounds frequently); s*ee also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "Medium Work," http://www.oalj.dol.gov/ PUBLIC/DOT/REFERENCES/DOTAPPC.HTM (last visited 3 June 2014).  "Medium work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT.  *See* 20 C.F.R. § 416.967.

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than preponderance. *Perales,* 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano,* 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock,* 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### B.    Plaintiff's Contentions

Plaintiff contends that the ALJ: (1) erroneously found that plaintiff had the RFC to perform medium work; and (2) improperly assessed her credibility. The court will address each contention in turn below.

### C. The ALJ's RFC Determination

Plaintiff asserts that the ALJ erroneously concluded that she has the RFC to perform medium work in light of her chronic back pain, panic attacks, difficulty with memory and concentration, and syncope[5] episodes. In support of her argument, plaintiff cites to no specific objective medical evidence in the record, but rather only the testimony given by her and her sister at the hearing, which, as discussed more fully below, the ALJ found to be not fully credible. The court finds no error.

### 1. Plaintiff's Back Pain

Contrary to plaintiff's contention, there is substantial evidence in the record that supports the ALJ's determination that plaintiff's back pain did not preclude her from performing medium work. The ALJ thoroughly assessed the medical evidence relating to plaintiff's back pain as follows:

> [Plaintiff] underwent a consultative examination with Dr. E.C. Land in July 2006. She reported a recent fall with injury to her lower back as well as history of upper back pain. . . . In December 2009, [plaintiff] sought treatment for chronic back pain; however, she had a normal gait and an essentially normal physical examination. In May 2010, [plaintiff] advised that her pain was controlled with medications . . . . [Plaintiff] underwent an MRI of her spine due to pain in July 2010. The results of the MRI showed small disc protrusions in her lumbar spine without neural impingement and lumbar spondylosis (Exs. 4F and 9F).
>
> [Plaintiff] underwent an evaluation for low back pain and numbness in her feet in September 2010. She reported that she could not walk more than two blocks before needing to rest. Yet, it was noted that her lumbar spine MRI was essentially normal and she was simply referred to physical therapy (Ex. 7F). In November 2010, she demonstrated normal neck range of motion (Ex. 8F). In July 2011, [plaintiff] denied any myalgia or arthralgia pain and she exhibited normal range of motion. . . . In April 2011, [plaintiff] complained of constant, severe back pain and requested pain medicine. Yet, she had a negative straight leg raise

---

[5] "Syncope," commonly referred to as fainting or passing out, is defined as "a temporary loss of consciousness due to the sudden decline of blood flow to the brain." *See* Syncope Information Page (site of the National Institute of Neurological Disorders and Stroke), http://www.ninds.nih.gov/disorders/ syncope/syncope.htm (last visited 3 June 2014).

test,[6] normal range of motion, normal neurological exam and was able to walk on her heels and toes. . . . She complained of ongoing back pain in May 2011 and it was noted that the doctor was concerned about the amount of medications she requested (Ex. 11F).

. . . .

[Plaintiff] complains of chronic back pain; however, she has consistently demonstrated a normal gait and normal physical findings on exam. She also had a negative straight leg raise test in 20 II and was able to walk on her heels and toes.

Tr. 17-18 ¶ 4. This assessment by the ALJ is supported by substantial evidence, which includes the evidence she expressly discusses as well as additional evidence contained in the exhibits she cites. *See*, *e.g.*, Tr. 337, 341, 345, 349 (plaintiff reporting to treating physician that her back pain was controlled with medication); Tr. 319, 322, 326, 330, 334, 338, 342, 346, 350, 354 (plaintiff found to have "no abnormalities in gait or balance; . . . no tenderness in major muscle groups, strength is 5/5. [T]one is normal. [G]ait is normal"); Tr. 512 (plaintiff found to have normal range of motion, a negative straight leg raise test, normal muscle tone, reflexes, and coordination; plaintiff able to walk on both heels and toes); Tr. 519 (plaintiff found to have tenderness to palpation along the spine, but otherwise normal); Tr. 418-19 (spine specialist finding plaintiff to have spine tenderness and some limitation in range of motion, but otherwise normal and recommending only physical therapy and new medications). The court further notes that after seeing plaintiff monthly for nearly 10 months (from 28 December 2009 to 18 October 2010) (Tr. 316-56)), Kenneth Lovette, M.D. concluded that "[n]o data reveals significant pathologic foci of disease or alteration from normal anatomy to support [plaintiff's] level of symptoms." Tr. 353.

The record also includes three opinions from state agency nonexamining consultants who, like the ALJ, found plaintiff to be capable of medium work: Elizabeth S. Hoyt, M.D. (*see*

---

[6] In this test, the doctor raises a leg of the patient with the knee straight while the patient lies on his back and, if the patient feels pain down his leg and below the knee, the test is positive for a herniated lumbar disc. *See* OrthoInfo (site of the American Academy of Orthopaedic Surgeons), "Straight leg raise (SLR) test" in "Tests and Diagnosis" section of "Lumbar Disk Herniation," http://orthoinfo.aaos.org/topic.cfm?topic=a00534 (last visited 3 June 2014).

Tr. 78-88 (29 Dec. 2010 report)); Ellen Huffman-Zechman, M.D. (*see* Tr. 68-76 (1 Oct. 2010 report)); and E. Woods, M.S., M.D. *(see* Tr. 56-64 (26 Apr. 2010 report)). Specifically, Dr. Hoyt found plaintiff to have the same nonexertional limitations as the ALJ—occasional climbing, frequent stooping and crouching, and a need to avoid concentrated exposure to hazards. Tr. 62. Dr. Huffman-Zechman found plaintiff to have the same limitations with the exception of the limitation for occasional crouching. Tr. 72-73. Dr. Woods concluded that plaintiff had no nonexertional limitations. Tr. 84-86.

The ALJ gave "great weight" to Dr. Hoyt's opinion, accurately noting that "[her] findings are well supported by the objective evidence of record and there are no treating sources contradictory to [her] opinion[]." Tr. 18 ¶ 4. The ALJ gave "some weight" to the opinions of Dr. Huffman-Zechman and Dr. Woods, which found plaintiff less limited than Dr. Hoyt or the ALJ. Tr. 18 ¶ 4.

Accordingly, the court concludes that there is substantial evidence in the record to support the ALJ's determination that plaintiff's back pain did not prevent her from performing the limited range of medium work provided for in the RFC determination.

### 2. Plaintiff's Mental Impairments

The court draws the same conclusion, that substantial evidence supports the ALJ's determinations, with respect to plaintiff's alleged mental impairments of panic attacks from anxiety, and memory and concentration issues. At step two, the ALJ found that plaintiff's mental impairments were not severe. Tr. 15 ¶ 2. Applying the special technique for mental impairments, the ALJ found that plaintiff had only mild limitations in activities of daily living, social functioning, and concentration, persistence or pace, and that she had experienced no episodes of decompensation that were of extended duration. Tr. 15 ¶ 2.

The ALJ explained her findings on the severity of plaintiff's mental impairments as follows:

> At hearing, [plaintiff] and her daughter alleged anxiety and depressive symptoms that affect her social activities and concentration. However, [plaintiff] admitted that these conditions stemmed from her physical pain and the evidence suggests that her anxiety and depression are well managed with medications. [Plaintiff] testified that she was not able to perform household chores, but this appears to be due to her physical limitations. [Plaintiff] underwent a consultative examination with Dr. Judith Yongue in June 2006. She appeared depressed and anxious during the interview and Dr. Yongue diagnosed her with generalized anxiety disorder and major depressive disorder (Ex. 1F). However, [plaintiff] denied depression or anxiety in December 2009 and again in June 2010 (Exs. 5F and 6F). Although she received medications for anxiety and depression in November 2010, she denied any debilitating symptoms (Ex. 8F).

Tr. 15-16 ¶ 2. The ALJ's findings are supported by substantial evidence, including the evidence she specifically discusses. *See*, *e.g.*, Tr. 306, 318, 322, 326, 330, 334, 360, 361, 386, 388, 394, 395, 402, 426, 432, 485, 492, 502 (showing plaintiff's mental status/psychiatric examinations to be normal; Tr. 317, 321, 325, 329, 333, (plaintiff denying all psychiatric symptoms, including anxiety and depression); Tr. 337-38, 341-42, 345-46, 349-50, 353-54 (plaintiff reporting some depression due to life stressors but depression stable and mental status/psychiatric examinations otherwise normal); Tr. 70, 71, 82, 83 (statement made by plaintiff to state consultants that she took anti-depressant medication for her migraines and not for depression and that her depression does not keep her from working).

The ALJ's determination is also supported by the opinions of three state agency nonexamining psychological consultants. Two of the consultants, Steven E. Salmony, Ph.D. (*see* Tr. 83 (report dated 14 Dec. 2010)) and Banu Krishnamurthy, M.D. (*see* Tr. 60 (report dated 23 Apr. 2010)), made the same special technique findings as the ALJ. The third, Ken. M. Wilson, Psy.D. (*see* Tr. 71 (report dated 30 Sept. 2010)), concluded that plaintiff had no functional limitations or episodes of decompensation. The ALJ gave "great weight" to Dr. Salmony's

opinion.  As with Dr. Hoyt's opinion, the ALJ accurately stated that "[Dr. Salmony's] findings are well supported by the objective evidence of record and there are no treating sources contradictory to [his] opinion[]."  Tr. 18 ¶ 4.  The ALJ gave "some weight" to the opinions of Dr. Krishnamurthy—whose explanatory findings are somewhat less extensive than those of Dr. Salmony—and Dr. Wilson—who, as indicated, found plaintiff less limited than Dr. Salmony or the ALJ.  Tr. 18 ¶ 4.

Thus, there is substantial evidence supporting the ALJ's determination that plaintiff's mental impairments are not severe and, specifically, that they do not preclude her from performing medium work.

### 3. Plaintiff's Syncope Episodes

Finally, with respect to plaintiff's assertion that her syncope episodes preclude an RFC of medium work, the court again finds that the ALJ's determination is supported by substantial evidence.  At step three, the ALJ determined that plaintiff's syncope is not related to any neurological disorder in a listing (Tr. 16 ¶ 3), and plaintiff does not challenge this finding.

At step four, the ALJ thoroughly discussed her assessment of plaintiff's syncope as follows:

> [Plaintiff] sought treatment in June 2009 due to a syncopal episode.  She reported that she had had these symptoms for a year.  Yet she had negative psychiatric and neurological examination during evaluation. . . . [Plaintiff] received treatment after fainting and hitting her head in June 2010. The medical records note that there was question of whether her fainting was due to opioid and benzodiazepine intoxication.  A head CT scan was negative (Ex. 6F).
> . . . .
> Although [plaintiff] presented to the ER after fainting in September 2011, she left prior to being examined (Ex. 12F).
> . . . .
> [Plaintiff] has reported frequent fainting spells and there is evidence of a few hospital visits for these spells but there has not been a definitive diagnosis or treatment plan.  Moreover, a head CT scan was negative and she has had normal neurologic examinations.

Tr. 17-18 ¶ 4. The ALJ's findings are supported by substantial evidence, including the evidence she cites. *See*, *e.g.*, Tr. 373-75 (hospital visit following syncope episode resulting in diagnosis of "[s]yncopal episode, question opioid and benzodiazepine intoxication"; "Urine drug screen show[ed] the presence of benzodiazepines, barbiturates, methadone, and oxycodone"); Tr. 378 (consulting doctor's impression that plaintiff's "syncope may be related to her multiple medications that she is on and multiple pain medications" as "[t]hese can cause hypotension"); Tr. 383, 449 (negative CT scans of the head after syncope episodes). The court further notes that on 20 July 2006, plaintiff told a state consultant that she was currently wearing an event monitor for evaluation of her syncope (Tr. 281), but there is no evidence in the record indicating any diagnosis or other results from this evaluation.

In sum, substantial evidence supports the ALJ's determination that plaintiff's syncope episodes do not preclude her from performing medium work.

### 4. Conclusion

For the foregoing reasons, the court concludes that the ALJ's RFC determination is supported by substantial evidence and based on the proper legal standards. Plaintiff's challenge to the ALJ's RFC determination should accordingly be rejected.

### D. The ALJ's Assessment of Plaintiff's Credibility

Plaintiff challenges the ALJ's credibility determination with respect to her testimony regarding syncope and back pain. The court finds no error.

The ALJ's assessment of a claimant's credibility involves a two-step process. *Craig*, 76 F.3d at 593-96; 20 C.F.R. § 416.929(a)-(c); Soc. Sec. R. 96-7p, 1996 WL 374186, at *1 n.1, 2 (2 July 1996). First, the ALJ must determine whether the claimant's medically documented impairments could cause the claimant's alleged symptoms. Soc. Sec. R. 96-7p, 1996 WL

374186, at *2. Next, the ALJ must evaluate the extent to which the claimant's statements concerning the intensity, persistence, or functionally limiting effects of the symptoms are consistent with the objective medical evidence and the other evidence of record. *See id.*; *see also* 20 C.F.R. § 416.929(c)(3) (setting out factors in addition to objective medical evidence in evaluation of a claimant's pain and other symptoms). If the ALJ does not find the claimant's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." Soc. Sec. R. 96-7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12cvl742, 2013 WL 1314781, at *7 (W.D. Pa. 28 Mar. 2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

In assessing plaintiff's allegations, the ALJ made the finding at the first step of the credibility assessment that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 17 ¶ 4. At the second step of the assessment, the ALJ found that allegations were not fully credible. Tr. 17 ¶ 4. The ALJ stated that "[plaintiff's] statements, as well as those of Ms. Wood [plaintiff's sister] concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment." Tr. 17 ¶ 4.

The ALJ also provided specific reasons for her credibility determination grounded in the evidence of record as follows:

> The above-summarized evidence illustrates that [plaintiff's] spine disorder, fibromyalgia, syncope, and hypothyroidism do provide for limitations in her abilities as evidenced by the medical evidence of record and her testimony at the hearing. However, the record also shows that [plaintiff's] impairments are not so debilitating that they prevent her from [performing] medium work. Her impairments further limit her to only occasional climbing, frequent stooping and crouching; and no concentrated exposure to hazards. Her residual functional capacity is generally supported by the longitudinal treatment record. [Plaintiff]

13

complains of chronic back pain; however, she has consistently demonstrated a normal gait and normal physical findings on exam. She also had a negative straight leg raise test in 2011 and was able to walk on her heels and toes. She is on medications for her thyroid condition, but it was deemed stable in May 2010 and it does not appear that she requires any significant care for that impairment. [Plaintiff] has reported frequent fainting spells and there is evidence of a few hospital visits for these spells but there has not been a definitive diagnosis or treatment plan. Moreover, a head CT scan was negative and she has had normal neurologic examinations.

Tr. 18 ¶ 4. The ALJ's analysis also included, of course, the other medical evidence discussed in detail above. Further, while not fully crediting plaintiff's allegations, it is apparent that the ALJ did not reject them entirely given that she found plaintiff capable of work at only the medium level and, even then, subject to various limitations. Tr. 16 ¶ 4.

The court concludes that, as required, the ALJ gave specific reasons for her determination of plaintiff's credibility that are supported by substantial evidence. The ALJ's analysis of plaintiff's credibility otherwise conforms to applicable law and is supported by substantial evidence. Accordingly, plaintiff's challenge to this portion of the ALJ's decision should be rejected.

## III. CONCLUSION

After careful consideration of the ALJ's decision, the court concludes that it is supported by substantial evidence of record and based on proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 23) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 21) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 17 June 2014 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review

by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.  Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 3rd day of June 2014.

James E. Gates
United States Magistrate Judge